Good morning. May it please the Court, Tara Stuckey for Petitioner. I plan to reserve two minutes for rebuttal. Your Honors, the parties agree that the BIA order before you is indefensible. The only dispute is whether this Court should correct the BIA's errors once and for all, or whether it should remand this case and further drag out these proceedings. The only basis for remand is the Attorney General's opinion in Silva-Trevino. For two reasons, remand in light of that decision is unwarranted. First, as the Third Circuit has held, Silva-Trevino is undeserving of deference because it dramatically alters a framework required by statute. Second, even assuming that it does merit deference, the opinion cannot be applied retroactively because it is an abrupt departure from a century-long practice of applying the categorical modified categorical approach to this exact case. It seems that there's a couple of reasons to remand it. You mentioned Silva-Trevino, but then also it would seem that you've got a Ruiz-Vidal issue in terms of how that would be affected because for them to consider the effect of Ruiz-Vidal on his removability based on his September 7th and December 5th offenses. So it seems to me there's a lot of reasons to remand. I know you just want it decided right here and you want to win, but it seems that there's a lot of reasons to remand and let the Board do certain things in the first instance. Your Honor, we do ask that if this Court would decide this case based on the canceled grounds rule that it would also decide the Silva-Trevino issue because any remand will the government will likely attempt to apply Silva-Trevino. But we usually like to let the Board decide things in the first instance before we do. We usually, I mean, that's sort of the way that you do things with agency work. You let them decide it and then we review it if they get it wrong. And in this case, Your Honor, that line of cases, Ventura and Gonzalez v. Thomas, those cases did not present this issue. They involved asylum determinations, which are inherently within the discretion of the agency. There was no question there whether the opinions deserved deference at all or whether those opinions should be applied retroactively. Those are questions within the institutional competence of this Court. And the agency has already articulated a very clear and broad rule and has said that it wants to apply that in this case. Did you even exhaust your due process claim? Your Honor, the BIA's, yes, our brief before the BIA, Mr. Casarito-Gomez's brief, raised issues about whether he said that his admissions were confused and he didn't claim he had a due process violation, right? He didn't use the word due process. He did not use the word due process, Your Honor. But I think that any fair reading of the of his brief before the BIA said, you know, a concession by a pro se respondent without more cannot be used as the sole basis discussed his confusion. These are the sorts of things that this Court considers, you know, the brief as a whole and would believe that that was exhausted. Well, there's another issue that I see, too, in terms of, all right, that you want us to say that he didn't understand it so when he admitted, that when he admitted all three of them, because essentially he already got a break one time, you know. I mean, in terms of he's not the type, you know, he's not the type that you look at and you say, oh, he's so sympathetic, he just keeps drunk driving, and then, you know, you give him relief and then he goes out, you know, then you see the news flash, you know, court gives him relief and then he kills someone, you know, illegal kills someone else with the drunk driving. That being said, he admits three, he did have three, but one of them didn't get charged for some time later. Okay. So let's assume that we say that, okay, the court should have clarified that and made sure, and apparently the government initially had four, but then they said, oh, there aren't really four, there's only three, and then he admits that. But then let's say, you know, we give you the benefit of the doubt there and say, well, the government should have, the IJ should have cleared that up and he really didn't have, he didn't really have three, he only had, how many would he, he only, he had one that wasn't there before. That's correct. And then supposedly then there's some authority that would seem to indicate if the other two were the basis for removal before, then maybe they can't be the basis for removal now, right? That's correct. Well, that's an argument, right? But there was also the allegation that the five-year problem. Right. And the court never got to that, did it? No, it didn't. And, Your Honor, the government has waived any argument about the five-year rule. It hasn't contested that at all in its briefs. But as the court never ruled on it. The IJ, the IJ's decision. The IJ went with the CMITs, right? But within five was also part of the CIMT ruling. There were two charges both based on the CIMT ruling. Did the IJ actually get to that? The orders, he. I don't see it in the, I don't see it there. The IJ refers to charges in the plural form. Where in there do you see the discussion about the five years? Because that seems that maybe a record can be, if it's not, if it's not, if we don't have a categorical crime, then there's the modified categorical about that. And I don't even know, we don't even really know when the five years would run, right? Well, it runs when he was admitted, Your Honor. But when was he admitted? We never tell from the record. We know that he entered the country in 1988. But then when, but he, but he had, but we don't know that he legally entered. He was, his status was adjusted in 1995. All right. And if 1995 is the date, then you've got one within five years, right? Except that under this particular adjustment, he has to be adjusted to a lawful temporary resident prior to that, and that triggers the date of admission. But aside from any of that, I mean. We have to speculate on all that, because that wasn't really developed in the record, because they just dealt with his admission to the three, the three CIMTs, right? I don't see where they dealt with that in the record. I know it was one of the chargings, but it doesn't seem that they ruled on that. Your Honor, I think that the, the BIA's order, the BIA's, sorry, the IJ's order at 34 and 35 repeatedly refers to charges. And he took the purported concessions as to both of those charges. And even if we assume that it, the BIA did, the IJ and the BIA did rule. He had three joint drivings. Those are the charges that he admitted, right? Well, it's the charge of removability, and there was one charge of removability based on having committed two or more crimes involving moral turpitude. The second charge of removability was for having committed a crime involving moral turpitude within five years. So. Is that, do you, is there anything, though, that ever says within the five years? It seems like there is. In the transcript, he takes a concession, a so-called concession as to the within five years. And even despite any ambiguity that there might be as to that question, we still have the issue of the two or more crimes involving moral turpitude. And the categorical, modified categorical approach that this Court has long applied requires that this order of removal be reversed. I'd like to reserve the remainder of my time if there are no further questions. Thank you. May it please the Court. Konnichiwa for the Respondent, the Attorney General. The Petitioner here today, after previously being in immigration proceedings and being granted cancellation of removal, was charged for, was convicted for a third time of an aggravated DUI and charged with removability for a crime involving moral turpitude. The IJBELO carefully explained to the Petitioner that DHS had the burden to prove his removability and that DHS would have to prove all the elements of the conviction, specifically that he was driving while intoxicated, while knowing that his license was revoked or suspended. Petitioner, nevertheless, admitted to the convictions as the immigration judge described them and conceded removability. It doesn't sound to me like the IJ really did his job here. I mean, he's got a, the Petitioner was not represented at the time, right? That's correct, Your Honor. He was present. And he's not a lawyer, right? That's correct, Your Honor. Whereas the IJ presumably is. Well, he admitted that he went out and got another drunk driving after he got relief. That's not true. He had gotten, the offense occurred before that. And it just wasn't charged until after that. And the IJ had the documentation that that was the case. So he sits there. The file shows that this is a preexisting, a conviction for preexisting conduct. And it's sort of like he's not there, the IJ. And he listened to the pro se Petitioner admit. I mean, I think he probably could have gotten him to admit that he had something to do with the Spanish Inquisition, if that's, you know, if he had just said, do you admit that you were Torquemada? He said, yes, I do. I'm sure he would have admitted whatever the IJ told him to admit. Well, he might have been just being honest, too, and admitted that he has gone out and drunk drive since then. But it didn't have anything to do, the problem was that there was an inconsistency with what the IJ had in front. So someone should have asked those questions to straighten that out. And plus, you charge four, then you get it down to three. It seems a little bit like the whole thing is like the gang that can't shoot straight. Well, with all due respect, Your Honors, the immigration judge was referring to the convictions. And he did explain the elements of the convictions that would be necessary. Well, how do you know that? I mean, how do we know what he understood between the two? Because then right after that, he says, okay, even though I admit all that, I want to appeal. If you really thought, you know, if you admit something, you don't immediately say, well, I'm appealing, because if you understand that you're admitting it, you know that that's going to be the end of it. So that kind of is another disconnect in terms of did he really understand what was going on. And the IJ got that part, and he said, well, in that case, you really shouldn't be admitting if you want to appeal. Obviously, there's something wrong here. But that's okay. Fine. I don't know. It doesn't sound to me like the IJ really did what he – I mean, isn't the IJ supposed to develop the record? Isn't that part of the IJ's responsibility? That is part of the – And when the IJ has documentation in front of him that's clearly inconsistent with what he's getting the petitioner to admit, isn't that sort of falling down on the job in terms of the duty to develop the record? With all due respect, Your Honors, the IJ explained the elements of the convictions. So it's your position that he got due process? He had a fundamentally fair hearing and an opportunity to be heard. He had an opportunity to challenge the convictions. Not the kind of hearing you'd want your son to have if he ever got into difficulty. I mean, I don't really have a son. I'm just hypothesizing a son here. Certainly not the kind of hearing I'd want my son to have. If there were any claims of due process violations, those should be considered by the board in the first instance. In this case, you're correct that the way this case proceeded is strange. That's part of the reason why this record is – has not been considered fully by the board, because they relied on the petitioner's admissions. That is precisely why we are asking for remand in this case. Well, if we don't agree with you, that if we feel that there was a due process problem and that it has to go back, petitioner is saying, okay, but you can just decide it here and grant him relief. Why is that wrong from your perspective? What would happen, you know, what would you do, what would need to be done, and why can't we decide it here? Remand is required in this case because of two instances of intervening case law. The first is S. Young, which held directly that judicial admissions cannot serve to fulfill DHS's burden to prove removability. And the second is the Attorney General's guidance in Silva-Trevino, which clarified the ambiguous provision at issue here, namely whether a conviction constitutes a crime involving moral turpitude. Both of those decisions did not exist at the time DHS and the board decided this case. And so the board should have an opportunity to consider, in light of those decisions, the this case at hand, including the documents in the record. And the board would approach it differently. You've also got the Ruiz-Vidal issue, right? Our position is that Ruiz-Vidal is immaterial because Ruiz-Vidal served. In that case, the Court decided that the one conviction that the alien had been granted cancellation for could not be reused for a new charge of removability. However, it has been held in many cases that a new additional charge, a new additional conviction, can, in conjunction with the old conviction, serve to create a new charge of removability, which is exactly what happened here. Petitioner claims that the two of them ---- What if we disagree, if we were to disagree with the government on that, and if we read Ruiz-Vidal's holding, basically it's you use it once and discard it. It's like a spent shell cartridge. Once you pull the trigger, you know, the shell cartridge is spent, and that conviction cannot be used anymore. Even if the Court were to hold that ---- Then you lose two of the convictions right there. If we were to interpret Ruiz-Vidal that way, you lose two of the three, and you need two altogether. So you've got ---- you haven't got enough cartridges left, right? The issue is entirely unexhausted. Even under a claim that the Petitioner raised a general claim of Ruiz-Vidal, the Petitioner didn't even raise a general argument to put the Board on notice that he would be challenging any of the prior convictions or the prior grant of cancellation. Well, what about the five-year? What did the IJ do about the five-year? You were correct when you said that it's unclear what evidence in the record supports that. That's another reason for remand. Did the IJ find that that was the basis, or what? The IJ does not discuss that in his decision. So it's unclear when his date of admission is. If he was actually admitted before 1995, before he was granted LPR status, we don't know. That would have to be something that would be clarified. All right. But would you be able to proceed on the five-year under a modified categorical approach? That would be for the immigration judge or the Board to decide in the first instance. Well, I know, but would you have evidence to prove that? If you don't have any evidence to prove it, why would we remand for an effort in futility? We're asking for remand in light of the intervening decisions, Essiong and Silva-Trevino. But you don't always get what you want. So that being said, would you be able to, you know, if in fact it would go to the modified categorical, would you be able to introduce evidence? You weren't given that opportunity previously on the five-year, right? That's correct, Your Honor. The five-year charge was not fully developed. So if it were to be remanded for consideration of that, the Board could, if necessary, remand to the IJ for a fuller development of the charge. But the government's still got to be able to put something on. But you don't know whether you could even do that? It would be speculative of me to presume what evidence could or could not be found. Whether Silva-Trevino would apply retroactively is something that the Board would have to consider in the first instance. The Attorney General left completely open how it would actually apply. What he did was just interpret the ambiguous statute. And this Court recently held in Morales v. Cierdo that ambiguous provisions of statutes do apply retroactively. And furthermore, this Court has already remanded in three cases for reconsideration in light of Silva-Trevino. If the Board were to determine that Silva-Trevino would apply, Petitioner would have an opportunity to challenge that. And if they were, he would have an opportunity to challenge how the Board deems it would apply. I see that I'm out of time. May I conclude briefly? Conclude? Do you have something else to say? Just that all the issues that Petitioner has raised here, the Rees-Vidal due process, are issues which the Board has not had an opportunity to consider in the first instance. And so in light of the intervening case law, the Board should first have an opportunity to reconsider this case in light of the intervening case law and to look at the documents which they didn't have an opportunity to consider because of Petitioner's admissions and concession of removability. Thank you. Thank you. Your Honors, the record in this case consists of three documents and a confused response by a pro se alien. The government has pointed to nothing and, in fact, has used the word speculative to describe what would happen at the next proceedings. They have pointed to absolutely nothing that would provide the basis for remand. On this record, the categorical modified categorical approach. The problem is your client got cancellation removal based on two DUIs, right? There were three, in fact. I mean, by the time he got cancellation removal, he had, in fact, committed three offenses. He wasn't charged or convicted. But this changes the complexion of things. And why is this exactly the kind of situation where the Board should have a chance to go back and say, well, we granted cancellation removal the first time based on two. Three is more serious. And, Your Honor, even if we. It's not a game. Your client also contributed to the confusion here because some people actually know what their. I mean, it isn't totally complicated to say he could have said, well, no, I actually didn't get a new one, but I had been arrested and then they they decided to charge me much later in the game. That having been the case, that would have, you know, I mean, some people do. You know, I was a criminal judge for a long time and people actually know that. Your Honor, but in this context, the this court and the BIA have never considered admissions as being a basis for removability. So that's another reason that Silva-Trevino should not apply retroactively here. These admissions or so-called admissions were made prior to any sort of decision that would allow consideration of anything beyond the record of conviction. Well, it just seems to me you want it. You want part of it your way. But then, you know, I mean, you want everything set aside. But then there were mistakes that your client contributed to. And it just seems that it should just all go back and that the BIA, that they need to address all of this in the first instance. And some of this may very well get knocked out. And maybe there won't be anything left at the end of it. And then they can decide whether they want to retroactively apply Silva-Trevino. We can then review that. They can decide the effect of Ruiz-Fedal on this particular one. And we can review that then. Your Honor, this Court has said that the BIA cannot consider the question of retroactivity. The Attorney General's opinion is binding on all immigration proceedings. That's a question that only this Court can consider. Practically, what we're talking about here is remanding this case for basically the re-litigation. You're saying they cannot decide it in the first instance? The retroactivity question? Mm-hmm. No, the Attorney General's opinion. How worthy for that? That – Your Honor, in – we cite a case in our supplemental brief, Garcia, that says that that is not – that it's not within the realm of the Court. What's the case? It's in the supplemental brief. Certainly, the government can pre-termit the issue by simply not pressing it. I'm sorry? The government certainly can pre-termit the issue by not pressing. Could pre-termit it? Yeah, just make it not come up. By not pressing the civil tribunal issue? Yeah, by simply not pursuing it. And then they sort of ask us to issue a hypothetical opinion that if there was a decisive precedent, if he were found to be – to have committed that kind of offense, that would be applying to the tribunal retroactively would be a violation. I mean, I don't know. This sounds awfully hypothetical to me. I have your supplemental brief here. What is the name of the case? Garcia-Ramirez. I'm sorry? Garcia-Ramirez. Garcia-Ramirez, right? Garcia-Ramirez is on page 24 of the supplemental brief. That's what happens when you don't put them in the table of authorities. 24, huh? Page 21 of our supplemental brief, Your Honor. 21. 21 says – oh, no, I'm sorry. This is the Governor's supplemental brief. Is there some reason you didn't file a hard copy of this supplemental brief? I'm sorry? Is there some reason you didn't file a bound copy of the supplemental brief? I'm sorry if Your Honor didn't receive one. We did file supplemental briefs. Yes. In addition to that question, Valencia Alvarez v. Gonzalez, 469 F. 3rd, 1319, said also that the BIA does not determine retroactivity. And in Retail Wholesale, which is the opinion on which all of this retroactivity jurisprudence is premised, the Court stated there that it accords no deference regarding an agency's decision regarding retroactivity because it's not within the expertise of the agency. The Attorney General's opinion purports to apply broadly and never confines. In fact, the agency has been applying it retroactively. And so I just don't think that there's any question here. The government has asked for remand in light of that decision, and it will apply it if this Court does not hold that retroactive application would be impermissible. Meanwhile, Mr. Castor Vida-Gomez will remain in mandatory detention based on the charges for two or more crimes involving moral turpitude, as will all of the other petitioners who are in the same position, until this matter is sorted out. But they're not your clients. No, Your Honor. But that's the practical consequences of continuing to remand in light of a decision that should not be applied retroactively. Okay. Thank you. Thank you. You sure you filed a hard copy of this brief, yes? Yes, Your Honor. Did you receive them? Okay. Thank you. Thank you. Thank you. Thank you.
judges: Archer, Kozinski, Callahan